## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:19-cv-02719-STA-jay<br>) |
| SHEILA G. WILLIS, TREVOR WILLIS, MARCIA ADAMS, MICHAEL HUGHES, VIRGINIA KING, EDGAR WILLIS, | )<br>)<br>)<br>) |
| Defendants. | ) |

_____

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Sheila G. Willis' Motion for Summary Judgment (ECF No. 64) filed on October 1, 2020; the Response in Opposition (ECF No. 71) filed by Edgar Willis, Trevor Willis, and Virginia King; Trevor Willis', Virginia King's, and Edgar Willis' Motion for Summary Judgment (ECF No. 69) filed on October 13, 2020; and the Response in Opposition (ECF no. 74) filed by Sheila Willis.

### BACKGROUND

This matter concerns competing claims on the proceeds of a life insurance policy issued by Unum Life Insurance Company of America (Unum). Unum filed its Complaint in Interpleader on October 23, 2019. The Complaint, as amended (ECF No. 34), names as Defendants Sheila G. Willis, Trevor Willis, Marcia Adams, Michael Hughes, Virginia King, and Edgar Willis, all

1

putative claimants to some or all of the life insurance proceeds.[1] According to the Complaint, Unum issued a life insurance policy to Craig T. Willis through Mr. Willis's employer UGN, Inc. (Compl. ¶¶ 13, 14.) Mr. Willis passed away on June 20, 2019, thereby triggering Unum's obligation to pay basic life insurance benefits in the amount of $61,000 and supplemental life insurance benefits in the amount of $122,000. (*Id*. ¶¶ 19, 20.) The distribution of said benefits is now at issue.

On October 26, 2005, Craig Willis made the following designations for his life and supplemental life insurance policies: Sheila Willis, his wife, to receive fifty percent (50%); Virginia Johnson, his mother, to receive fifteen percent (15%); Edgar Willis, his son, to receive fifteen percent (15%); and Trevor Willis, his son, to receive twenty percent (20%). (ECF No. 74-1.) Craig and Sheila Willis divorced on October 31, 2012. The Marital Dissolution Agreement provides, in pertinent part:

> D. Insurance: The Husband has a life insurance policy through Unum Life Insurance Company. The Wife is currently named as the beneficiary of this policy and both parties agree that the Wife shall remain as the beneficiary of this policy for as long as he has this policy. (Amended Complaint ECF No. 34).

Defendants allege that, on December 12, 2012, a fax was sent to Sheila Willis' attorney, requesting that the life insurance provision of the Marital Dissolution Agreement be changed to read:

> D. Insurance: The Husband has life insurance policy through Unum Life Insurance Company. Both parties agree that the Wife shall remain as one of the beneficiaries in the amount of fifty percent (50%) of this policy for as long as he has this policy. (ECF No. 69, Exhibit A).

---

[1] The pleadings also name Express Funeral Funding, LLC as a Defendant. On March 30, 2020, the Court granted Unum's Motion for Default Judgment against Express Funeral Funding after the company failed to answer or enter an appearance.

Following the divorce, two beneficiary change forms were submitted to Unum. The changes left Sheila Willis' fifty percent designation unchanged, while altering the distribution of the remaining fifty percent. (Compl. ¶¶ 3, 4.) Virginia King gave sworn testimony, stating that she completed and signed the beneficiary forms at the direction of Craig Willis, who was a quadriplegic at the time. (ECF No. 67 ¶¶ 7,12,21.) According to Defendants, a note from Craig Willis' tablet dated March 7, 2019 was found that outlined the division of Craig Willis' life insurance benefits according to the most recent beneficiary change form. (*Id.* ¶ 30.)

Sheila Willis now moves for summary judgment, requesting that this Court find that she is entitled to the entirety of the death benefit paid into the court by Unum. Ms. Willis argues that the MDA's language is "clear and unambiguous" in designating her as "the beneficiary" of Mr. Willis' life insurance proceeds. That unambiguous language gives Ms. Willis a vested interest as a constructive trust over the death benefits which nullifies the designations on any beneficiary forms made prior to and after the MDA. Trevor Willis, Edgar Willis, and Virginia King likewise move for summary judgment and request that the Court limit Sheila Willis to fifty percent of the Unum insurance proceeds. They argue that the insurance provision of the MDA is ambiguous, and that the parties' intent was to maintain Ms. Willis' status as fifty percent beneficiary, as stipulated in the policy agreement.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near

the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson*, 477 U.S. at 255). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

Unum's life insurance policy falls under the Employee Retirement Income Security Act (ERISA). Generally, ERISA completely preempts most state laws, and divorce decrees purporting to affect the benefits payable under an ERISA plan are not exempt. 29 U.S.C. § 1144(a); *Unicare Life & Health Ins. Co. v. Craig,* 157 F. App'x 787, 791 (6th Cir.2005). However, if a divorce decree counts as a qualified domestic relations order ("QDRO"), it is exempt from ERISA's coverage. 29 U.S.C. § 1056(d)(3). In this instance, the Court need not decide whether the Divorce Decree qualifies as a QDRO, as the Sixth Circuit has noted that "once the benefits [of an ERISA employee welfare benefit plan] have been released to the properly designated beneficiary, the district court has the discretion to impose a constructive trust upon those benefits in accordance

4

with applicable state law if equity so requires." *Cent. States, S.E. & S.W. Areas Pension Fund. v. Howell,* 227 F.3d 672, 679 (6th Cir.2000).  Here, the Court has permitted Unum to deposit the life insurance benefit into the Court's funds and Unum has done so.  Therefore, because Unum properly released the benefits, the Court turns to Tennessee law to determine whether to impose a constructive trust.  *See Gray v. Aetna Life Ins. Co.*, No. 11-2204-STA-DKV, 2012 WL 1252572, at *2 (W.D. Tenn. Apr. 13, 2012).

In Tennessee, "[e]quity regards that as done which in good conscience ought to be done." *Holt v. Holt,* 995 S.W.2d 68, 71 (Tenn.1999) (quoting *McCann Steel Co. v. Third Nat. Bank,* 47 Tenn.App. 287, 337 S.W.2d 886, 891 (Tenn.Ct.App.1960)).  Tennessee courts exercise their equitable jurisdiction to impose constructive trusts, to "protect persons legally mandated to be listed as beneficiaries of a life insurance policy." *Id.* at 72.  Tennessee courts have held that a divorce decree mandating an individual to be listed as a beneficiary of a life insurance policy existing at the time of the decree vests in that individual an equitable interest in the designated policy, and the deprivation of that interest requires the creation of a constructive trust.  *See e.g. Goodrich v. Massachusetts Mut. Life Ins. Co.,* 34 Tenn.App. 516, 240 S.W.2d 263 (Tenn.Ct.App.1951); *Herrington v. Boatright,* 633 S.W.2d 781 (Tenn.Ct.App.1982).  However, a constructive trust is an extraordinary remedy that requires clear and convincing evidence that such a remedy is warranted.  *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 847 N.E.2d 405, 411 (2006); *See Colonial Life & Accident Ins. Co. v. Estate of Stewart*, 819 F. App'x 318, 322 (6th Cir. 2020).

Here, Ms. Willis' equitable interest in the Unum life insurance policy vested upon being designated as a beneficiary in the divorce decree.  The question before the Court is the scope of Ms. Willis' interest.  Although Ms. Willis argues that the contract language in the divorce

5

agreement is unambiguous, the Court finds that certain contract terms, which define the ambit of Ms. Willis' equitable interest, are indeed ambiguous.

A marital dissolution agreement is a contract and as such generally is subject to the rules governing construction of contracts. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001), *abrogated by Howell v. Howell*, 137 S. Ct. 1400, 197 L. Ed. 2d 781 (2017) (reversed on other grounds). "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009) citing *Allstate Ins. Co. v. Watson,* 195 S.W.3d 609, 611 (Tenn. 2006). Courts must look at the plain meaning of the words in a contract to determine the parties' intent and, where the plain meaning is ambiguous, "the court must apply established rules of construction to determine the intent of the parties." *Allstate Ins. Co.,* 195 S.W.3d 609, 611 citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 890 (Tenn. 2002). "This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." 5 Joseph M. Perillo, *Corbin on Contracts,* § 24.30 (rev. ed.1998); *Doe v. HCA Health Services of Tenn., Inc.,* 46 S.W.3d 191, 196 (Tenn.2001); *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).

Ambiguity does not arise merely because parties to a contract have differing interpretations of certain provisions; a contract is ambiguous if its meaning can fairly be understood in more ways than one. *Id*. "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact" appropriate for a jury. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) citing *Smith v. Seaboard Coast Line R.R. Co.,* 639 F.2d 1235, 1239 (5th Cir.1981).

Ms. Willis argues that the meaning of the marital dissolution agreement is clear and unambiguous, because it identifies Ms. Willis as "*the* beneficiary of this policy" [the life insurance policy through Unum], the singular use of the word "the" implying the exclusion of any other beneficiaries.  However, in construing a contract, "one clause may modify, limit or illuminate another." *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 704 (Tenn. 2008) (quoting *Cocke Cnty. Bd. of Highway Comm'rs v. Newport Utils. Bd.,* 690 S.W.2d 231, 237 (Tenn.1985)); *BSG, LLC v. Check Velocity, Inc.*, 395 S.W.3d 90, 93 (Tenn. 2012).  It then follows that the Court also does not read portions of a contract provision in isolation and that phrases or words within a single provision may act to illuminate others.  Further, the Court recognizes that plain and ordinary meaning is not necessarily equivalent to semantic meaning.  Therefore, when reading the clause at issue in the instant contract, the Court applies common sense and the rules of interpretation to achieve the overarching purpose of contract interpretation – ascertaining and giving effect to the intent of *both* contracting parties at the time that the parties entered into the agreement.  *See Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019) (noting the balance between textualist and contextualist principles that Tennessee courts have attempted to strike to give voice to the intent of parties to a contract).

The contract clause at issue states:

> D. Insurance:  The Husband has a life insurance policy through Unum Life Insurance Company.  The Wife *is currently* named as the beneficiary of this policy and both parties agree that the Wife *shall remain* as the beneficiary of this policy for as long as he has this policy.  (Amended Compl. ECF No. 34).

(Emphasis added).  Ms. Willis' assertion that this contract intended for her to be the sole beneficiary of the Unum policy is not clearly supported by the text.  The clause correctly identifies that Mr. Willis [the Husband] had a life insurance policy through Unum.  However, the statement

7

that Ms. Willis [the Wife] "is currently" the beneficiary and that she "shall remain" the beneficiary for as long as she has this policy, appears to be in conflict with an interpretation of this language that supports Ms. Willis' position of being the sole beneficiary. Those phrases imply a continuation of Ms. Willis' status at the time of the contract.[2] Determining that status compels the Court to examine extrinsic evidence.

> Tennessee judges have long used extrinsic evidence of the context and circumstances at the time the parties entered into the contract to facilitate interpretation of contract terms in accord with the parties intent… in interpreting a fully integrated contract, extrinsic evidence may be used to put the written terms of the contract into context, but it may not be used to vary, contradict or supplement the contractual terms in violation of the parol evidence rule.

566 S.W.3d 671, 688. Reviewing the designation form attached by Mr. Edgar Willis to his motion to be added as a defendant in this case, Craig Willis submitted said designation form to his employer, UGN, Inc., on October 26, 2005, the day that the Craig Willis obtained the policy, designating Sheila Willis as the fifty percent beneficiary of his Unum life insurance proceeds. (ECF No. 28-1.) Ms. Willis stipulates to the validity of this designation form and does not present evidence to suggest that her designation was changed in the time leading up to the MDA. (ECF No. 74-1.) Therefore, at the time of the MDA's drafting, Ms. Willis was the beneficiary of fifty percent of the Unum insurance benefit. Indeed, Ms. Willis remained a fifty percent beneficiary for the rest of the Insured's life. The two beneficiary change forms submitted to Unum after the MDA was entered maintain Ms. Willis' fifty percent designation while changing the designations of other beneficiaries. (ECF No. 34, Ext. D.) There is also, although the Court does not weigh it as heavily as other evidence, the sworn testimony of Virginia King, who states that Craig Willis intended for Sheila Willis to receive fifty percent of the Unum life insurance proceeds, as evinced

---

[2] Remain is defined as "To continue unchanged." Merriam-Webster Online Dictionary (2020) (www.merriamwebster.com (derived from Merriam-Webster's Collegiate Dictionary 11th ed.)).

by his directing her to sign the beneficiary change forms and the note on his tablet found after his death. (ECF No. 67.) In short, the Court has several persuasive pieces of extraneous evidence that indicate the intent of the parties to the MDA to designate Ms. Willis as the fifty percent beneficiary of the contract, but no evidence of intent in favor of Ms. Willis' position aside from the ambiguous language of the MDA and her own position. And the language of the MDA is ambiguous. The mere fact that the MDA refers to Ms. Willis as "the beneficiary" does not necessarily exclude the existence of other beneficiaries.[3]

Ms. Willis relies in part upon *Hinkle v. Estate of Harman*. However, the facts of *Hinkle* can be readily distinguished from the instant case. In *Hinkle*, a husband made his wife a beneficiary of his company-sponsored life insurance. They subsequently entered into an MDA which stated, in relevant part:

> The Husband shall continue to maintain and pay the Primerica Li[f]e Insurance Policy No. 13171515 and the life insurance presently maintained through his employment with Bi-Lo. The Wife shall be maintained as beneficiary with the parties' two minor sons to be equal alternative beneficiaries in the event the Wife predeceases the Husband.

*Hinkle v. Estate of Hartman*, No. E200601052COAR3CV, 2007 WL 700973, at *1 (Tenn. Ct. App. Mar. 8, 2007). The policy lapsed when the husband left his employment at Bi-Lo. When he rejoined the company, the husband purchased more life insurance coverage, designating his new wife and sons as beneficiaries. The question in *Hinkle* was not, as here, whether the first wife was the full beneficiary of the husband's first life insurance policy, but whether the husband was

---

[3] Merriam-Webster provides over sixteen definitions for the article "the," including "used as a function word before a proper name to indicate the distinctive characteristics of a person or thing" and "used as a function word to indicate that a following noun or noun equivalent is definite *or has been previously specified by context or by circumstance*." Merriam-Webster Online Dictionary (2020) (www.merriamwebster.com (derived from Merriam-Webster's Collegiate Dictionary 11th ed.)).

9

required to maintain the first Bi-Lo policy and whether the wife had a vested right in what she would have received in the absence of the policy's lapse. Whether the wife was the sole beneficiary of the policy referenced in the MDA was not in doubt – she was designated as such in the policy agreement, important context to the MDA. Moreover, the MDA in *Hinkle* is more specific than the one at bar – it names the wife as beneficiary and specifies the alternates should the wife predecease the husband. The extra specificity reduces the ambiguity in the MDA. Ms. Willis' reliance on *Dossett v. Dossett* is also misplaced. In that case, the MDA stipulated that the insured's children would be the beneficiaries of an unspecified insurance policy. The beneficiary named under that policy at the time of the drafting of the MDA was the ex-wife, and later, the new wife. *Dossett by Dossett v. Dossett*, 712 S.W.2d 96, 98 (Tenn. 1986). Therefore, the terms of the MDA contradicted the policy agreement, unlike the instant case, in which the MDA can be read in harmony with the Unum policy agreements at the time the MDA was signed and through Craig Willis' death.

The Court next applies the interpretive doctrine of *contra proferentum* which holds that any contractual ambiguities should be construed against the drafter. Here, the drafter is Ms. Willis through counsel, as parties stipulated to the fact that Craig Willis was unrepresented during the MDA proceedings and that Ms. Willis' attorney drafted the MDA. The ambiguity in the contract as relates to the scope of Ms. Willis' interest in the Unum policy should therefore be construed against Ms. Willis and in favor of the position that she was only intended to be the fifty percent beneficiary.

Based upon the cumulative weight of the above, including the extraneous evidence giving context to the MDA, and reading the contract consistent with common sense, it can be deduced that the intent of the parties was that Ms. Willis should be the fifty percent beneficiary and

consequently Ms. Willis only vested in fifty percent of the benefit upon Craig Willis' death. The Court must therefore decline to impose a constructive trust in favor of Ms. Willis, finding that there is not clear and convincing evidence to support the Court applying the extraordinary remedy of a constructive trust.

## CONCLUSION

For the forestated reasons, the Court is constrained to **DENY** Ms. Sheila Willis' Motion for Summary Judgment and will **GRANT** the Motion for Summary Judgment filed by Edgar Willis, Trevor Willis, and Virginia King.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  January 13, 2021